### Richard Neeson, Appellee, v. Sangamon County Mining Company and W. A. Brewerton, Appellants.

1. MASTER AND SERVANT—*federal income tax as proper expenditure in determining net profits as basis for compensation.* Federal income tax paid by the employer is a proper item of expenditure to be deducted by the employer in an accounting to determine the net profits of the business as a basis for the compensation of its mine superintendent under a contract of employment by which the superintendent was entitled to receive a percentage of the net profits as compensation.

2. MASTER AND SERVANT—*depreciation and depletion not deductible in determining net profits under percentage contract of employment.* An employer is not entitled to deduct from the receipts of its business an item of credit for depreciation and depletion in determining the amount of its net profits on an accounting with its superintendent who was employed under a contract which provided that his compensation should be a percentage of the net profits.

Appeal by defendants from the Circuit Court of Sangamon county; the Hon. E. S. SMITH, Judge, presiding. Heard in this court at the October term, 1922. Reversed and remanded with directions. Opinion filed April 23, 1923.

BROWN, HAY & STEPHENS, for appellants.

A. W. KERR, ROBERT H. PATTON and NOAH C. BAINUM, for appellee.

MR. PRESIDING JUSTICE NIEHAUS delivered the opinion of the court.

Richard Neeson, the appellee, commenced this suit in equity in the circuit court of Sangamon county

226 . APPELLATE COURTS OF ILLINOIS.

Neeson v. Sangamon County Mining Co. et al., 229 Ill. App. 225.

against the appellants, Sangamon County Mining Company and W. A. Brewerton for an accounting to ascertain the amount which he claimed to be due him for services as superintendent of the coal mining business of appellants under the terms of a written contract which is as follows:

"Springfield, Ill., 11-29-16.
"Memo of arrangement made this day between R. Neeson and Sangamon C. C. Co. Neeson to take charge of property as superintendent at a salary of $125.00 per month, plus a share of net profits, payable monthly, to wit: 5 per cent of same to April 1, 1917, and 10 per cent thereafter.
W. A. BREWERTON,
R. NEESON."

By agreement of the parties the contract was modified so as to fix 5 per cent of net profits for the entire time of appellee's employment, which extended from December 1, 1916 to August 7, 1918. It was conceded that the appellee had been paid $9,834.09 for his share of net profits under the contract. When the cause was at issue, it was referred to a special master in chancery to hear the evidence and report his conclusions, and to state the account between the parties with reference to the matter in controversy. The evidence was taken by the master and he made a report, stating the account between the parties as follows: That the total amount of receipts of the appellant company's business during the period of appellee's employment and chargeable to the company was $769,708.91, and that the total amount of expenditure during the same time which the company was entitled to credit for was $573,027.04. Deducting the total amount of expenditures from the total amount of receipts, the master found the amount of net profits of the company to be $196,681.87. Figuring 5 per cent on the last-mentioned sum would make appellee's share $9,834.09; then deducting from $9,834.09 the $6,318.96 which had already been paid appellee left a balance of $3,515.13 remain-

THIRD DISTRICT—APRIL, 1923.        227

Neeson v. Sangamon County Mining Co. et al., 229 Ill. App. 225.

ing due. Exceptions were filed to the master's report and to his findings by both the appellant and the appellee; the exceptions were overruled and the court sustained the master's findings and rendered a decree in accordance therewith. This appeal is prosecuted from the decree.

There are two questions raised on appeal concerning the account stated. It is contended by the appellants that the amount of federal income tax, $60,440.83, paid by the appellant company was an expenditure which reduced the amount of profits realized from its business during the period of time in question, and that the appellants should therefore have received credit for the same in arriving at the amount of net profits. And it is contended by the appellee that in stating the account, the appellant company was given credit in the items of expenditures for the sum of $47,242.03, which credit was for depreciation and depletion of the appellant company's capital, to which they were not entitled as a matter of law. These contentions necessarily involve the question as to what should be considered net profits in this case. In *Park v. Grant Locomotive Works*, 40 N. J. Eq. 121, a clear and concise definition is given of what constitutes net profits: "The words 'net profits' define themselves. They mean what shall remain, as clear gains of any business venture, after deducting the capital invested in the business, the expenditures incurred in its conduct, and the losses sustained in its prosecution." It seems apparent that taxes levied by the government upon a business venture is an expense necessarily incurred in the conduct of the business, and necessarily reduces the amount of gain or profit resulting therefrom. The manner in which the government arrives at the amount which the business will have to pay does not make any material difference; the result and effect of the payment of the tax would be the same, whether the tax was levied upon what the government considers a net income from the business, or upon a

228    Appellate Courts of Illinois.

Neeson v. Sangamon County Mining Co. et al., 229 Ill. App. 225.

gross income of the business, or whether it is exacted as a per cent of sales made in the business; in every instance it would have the effect of reducing the amount of gain or profit made in the conduct of the business, and necessarily reduce the amount of the net profits realized. We are of opinion, therefore, that in arriving at the net profits of the appellant company's business, the amount of the income tax paid should have been credited as a necessary expenditure of the business. The matter of the amount credited to the appellants for depreciation and depletion of its capital presents another phase of the same question. Deterioration of the value of the capital of a business cannot legally be regarded as an expense of the business, to be considered in arriving at the amount of net profits. *Mack v. Shortle,* 76 N. Y. App. Div. 587. Depreciation and depletion are not a loss sustained by the business in the conduct thereof, but merely a lessening of the amount of the capital of the business. Under the agreement between the appellee and the appellant company, the company had the obligation to furnish all the capital to carry on the business. The depreciation in the value of the capital, by the depletion of the coal area, by mining the coal was the very thing that was contemplated by the parties in entering into the agreement in question. Practically the same principle which is here involved was before the Supreme Court in *Selz v. Buel,* 105 Ill. 122, where the employer sought to take credit in the accounting for rents and profits, for interest paid on borrowed capital used in the business. The court in passing upon the point says: "Under the agreement it was clearly the duty of the appellants to furnish the capital necessary to carry on the business contemplated by the contract, and whether they had it in ready means, or would be compelled to borrow the whole or a part of it, and, if so, whether the loans would be for long or short periods, or whether the rates of interest would be high

or low, were matters about which appellee, in a legal sense, had not the slightest interest or concern." The appellee was not a partner in the business of the appellant company, and as stated in *Paine v. Howells,* 90 N. Y. 660, "he made his contract for a share of the net profits as compensation for his services upon the assumption that the firm capital was in the business, and to be used in its contract and to produce profits." Even as between partners, it has been held "that a partner furnishing property and goods to be used in the partnership business cannot at the dissolution claim for the ordinary natural increase in value or depreciation of such property." L. R. A. 1917E 879.

In view of what has been stated, we are of opinion that the appellant company is not entitled to the credit given it, in the account stated for depreciation and depletion, and that this credit should be eliminated. Making the changes heretofore pointed out in the account stated, by adding as a credit the $60,440.83 income tax paid by the appellant company, and deducting from the amount of expenditures the $47,242.03 item for depletion and depreciation, would leave a total amount of expenditures to be taken into consideration of $585,354.18; then deducting this amount from the total amount of receipts found by the master would fix the amount of net profits at $184,354.73. Five per cent of this sum is $9,217.73. Deducting from $9,217.73 the sum of $6,318.96 which the appellee has already received leaves a balance due him of $2,896.77.

For the reasons stated the decree is reversed and the cause remanded with directions to state the account between the parties in accordance with the views herein expressed.

*Reversed and remanded with directions.*